Robinson *v.* National Life, etc., Ins. Co.—76 Ind. App. 161.

ment is therefore reversed with directions to the trial court to grant a new trial of the cause, to set aside its approval of appellee's report, and for further proceedings consistent with this opinion.

## ROBINSON *v.* NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY.

[No. 10,681. Filed February 4, 1921. Rehearing denied May 11, 1921. Transfer denied June 24, 1921.]

INSURANCE.—*Accident Insurance.—Death from Pneumonia Following Accidental Injury.—Liability.*—Under an accident policy insuring against loss of life resulting directly and independently of all other causes from bodily injury effected through accidental, external and violent means, the insurer is liable for the death of a policy holder who, about seven weeks after sustaining a fractured leg as a result of a fall and while still confined to his bed as a result thereof, contracted pneumonia which caused his death, where the disease was the natural sequence of insured's weakened physical condition resulting from his injury.

From Marion Superior Court (A3,063); *Theophilus J. Moll,* Judge.

Action by Sallie Robinson against the National Life and Accident Insurance Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*John W. Holtzman* and *John J. Kelly,* for appellant.
*John H. Rader* and *James W. Noel,* for appellee.

NICHOLS, J.—Action by appellant against appellee on an accident insurance policy to recover $500 for the death of her husband.

The errors relied upon for reversal are that the court erred in its conclusions of law on its special finding of facts, and that the court erred in its first and second conclusions of law respectively.

It appears by the special finding of facts that on Oc-

tober 20, 1915, appellee delivered to appellant's decedent the policy of insurance by the terms of which appellee insured appellant against the loss of life, limb, sight, speech and hearing resulting directly and independently of all other causes from bodily injury which is effected through accidental, external and violent means, in the initial principal sum of $500, with a weekly indemnity of $12.50. Such policy continued in force and effect until February 17, 1918, the date of the decedent's death. On December 11, 1917, the insured suffered a bodily injury by external, violent means which consisted of a violent fall, directly causing a compound fracture of the left femur at or near the junction of the lower middle third thereof, the injury being such as would cause his left leg to hang limp from his body. He received attention within a half-hour and was transported to the City Hospital of Springfield, Ohio, where his leg was later diligently treated, and properly set and placed in a temporary splint. On the same night he was brought to Indianapolis and taken to the City Hospital, where he received treatment by a competent railway surgeon upon whose advice he was moved to his home. The fracture continued to heal in a normal manner, the leg being in a case, without any complications whatever until February 2, 1918, when it was observed that the insured had lobar pneumonia. At the time of his injury the insured was a strong and able bodied man in good health and physical condition. The fracture ran the usual course of such injuries and temporarily there was a good union. After said injury the insured experienced a general decline in strength and became greatly emaciated. He was confined to his bed from the time of receiving the injury until he died. His decline and emaciation was caused by such fracture and by being confined to bed for such a length of time. On account of his depleted and weakened condition his re-

MAY TERM, 1921. 163

Robinson *v.* National Life, etc., Ins. Co.—76 Ind. App. 161.

sistance to disease was lowered, and he was rendered more susceptible to pneumococcus germs than if he had not been injured. Said pneumonia was neither traumatic nor septic, but was caused by infection with pneumococcus germs, and it eventually resulted in his death. The pneumonia was the natural sequence to his condition resulting from the injury which he received as aforesaid. During the course of said pneumonia, the osseous tissue which held the broken parts of the femur bone together dissolved and the broken parts pulled loose and again allowed his leg to hang limp from his body. He died February 17, 1918. The immediate cause of his death was said lobar pneumonia. The death resulted within ninety days from the date of the accident. The injury aforesaid depleted the physical strength of said decedent and he was thereby rendered more susceptible to pneumonia. During the course of his confinement on account of said injury he was infected with pneumonia and his physical strength was unable to resist said pneumonia, and as a natural, probable, direct and immediate result of his said injury and pneumonia, he died. He received from appellee a weekly indemnity of $12.50 until February 13, when he was thereafter paid a sick benefit at the rate of $12.50 being up to the time of his death; $8.90 for the last week.

On these facts the court stated conclusions of law that appellant is not entitled to recover anything against appellee and that appellee was entitled to recover its costs.

There was an exception to each of the conclusions of law. Judgment was rendered against appellant in harmony with the conclusions of law from which this appeal is prosecuted.

It is to be observed by the court's special finding that at the time of the injury, the insured was a strong and able bodied man in good health and physical condition,

and that after such injury, the insured experienced a general decline in strength and became greatly emaciated. Because of such fracture he was confined to his bed from the date of the injury until he died, which resulted in his decline and emaciation, and that because of his depleted and weakened condition, produced as aforesaid, his resistance to disease was lowered and he was rendered the more susceptible to the pneumococcus germs than if he had not been injured, and that the pneumonia preceding his death was the natural consequence of his condition resulting from the injury. It is a well known fact of medical science that pneumococcus germs are generally present in the respiratory tract of healthy bodies, but that they are innocuous because of the resisting power of such healthy body, and become active only when the lung tissues are so debilitated as to be unable to resist their attack. If the vital resistance has suffered, as by disease or emaciation, the attack of the germs is facilitated and pneumonia is more readily produced. McFarland's Pathogenic Bacteria and Protozoa (8th ed.) 445, 1 Strumpell 242. From this we readily conclude that the pneumonia of the insured was not the result of an accidental contagion, but of the activity of the pneumococcus germs ever present upon the lung tissue which had been weakened as a result of the injury.

It is contended by appellee that the death of the assured did not result directly and independently of all other causes from the bodily injury, but that it was the direct and immediate result of the sum of two causes, namely his said injury and pneumonia. Appellee's counsel forcefully present this contention and support it by numerous authorities, but we are not in harmony therewith. We do not view the pneumonia as one of two independent causes, the sum of which produced the death of the insured, but rather as one of the links in

the chain of causation, and that the accident and the injury resulting therefrom is the proximate cause.

In *Driskell* v. *U. S. Health & Accident Ins. Co.* (1906), 117 Mo. App. 362, 93 S. W. 880, the provision in the policy was "if death should result solely from such injuries," and the court said: "We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of result and not that it must have been so virulent in character as necessarily and inevitably to have produced that result regardless of all other conditions and circumstances. People differ, so widely in health, vitality and ability to resist disease and injury, that what may mean death to one man would be comparatively harmless to another and, therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury."

In *French* v. *Fidelity & Casualty Co.* (1908), 135 Wis. 259, 115 N. W. 869, 17 L. R. A. (N. S.) 1011, the court held: "That where death results from disease which follows as a natural, though not the necessary, consequence

of an accidental physical injury, it is within the terms of the accident policy, the death being deemed the proximate result of the injury and not of the disease as an independent cause."

In *Delaney* v. *Modern Accident Club* (1903), 121 Iowa 528, 63 L. R. A. 603, 97 N. W. 91, it was held that where death results from disease which follows as the natural though not the necessary consequence of the physical injury which is accidental, it is deemed the proximate cause of the injury, and not of the disease, and within the requirements of the policy that death must result solely from accidental injury.

In *Isitt* v. *Railway Passengers Assur. Co.* (1889), L. R. [1889] 22 Q. B. 504; pneumonia which was caused by taking cold while confined to bed as a result of the accident when this would not have occurred had the person been in a normal state of health, such death was regarded as caused by the accident. In that case the provision was that death should be from the effects of the injury caused by the accident. The court makes the following statement: "The assured fell and dislocated his shoulder; he was in consequence confined to his room; he there suffered pain, became restless and unable to wear his clothes, and was reduced to a condition of debility. He thus became unusually susceptible to cold; he caught cold, and in consequence pneumonia; and he died of pneumonia. These facts appear to me to constitute a chain of circumstances leading naturally from the injury to the death. The question of law is then whether or not, as a matter of law, the chain of circumstances ought to be taken into consideration as 'effects' under this insurance. Construing, as I do, the terms of the insurance as meaning that the injury must be immediately caused by the accident, but that death need not be immediately caused by the injury, I answer this question in the affirmative. I think the circum-

stances which followed were in contemplation of law 'effects' of the injury. I am, therefore, of opinion that the assured died 'from the effects of the injury' within the meaning of the policy, and that the plaintiffs are entitled to recover the amount of the insurance."

In the case of *Etherington* v. *Lancashire and Yorkshire Accident Ins. Co.* (1909), L. R. [1909] 1 K. B. 591, 6 B. R. C. 517, the action was upon an accident insurance policy for death from an injury, the effect of which was to lower the vitality of the insured's system and being obliged to ride home while wet still further lowered his vitality. The effect of this lowered vitality was to cause the subsequent development of pneumonia in his lungs of which he died. The pneumonia was not septic or traumatic but arose as the direct and natural consequence from the fact that the diminution of the vitality, caused through the accident as above mentioned, allowed the germs called pneumococci, which in small numbers are generally present in the respiratory passages, to multiply greatly and to attack the lungs. It was held that the death of the assured was directly caused by accident within the meaning of the policy, and that the case did not come within the proviso therein, and the company was consequently liable on the policy. The court speaking by Kennedy, L. J., says: "It is not a case of a new disease or other cause which intervenes. The fatal pneumonia was a 'sequela' of the accident against the consequences of which it was the object of the policy to insure. Again, I think that the words 'even though the disease or other intervening cause may * * * have been due to weakness or exhaustion consequent thereon' in the last limb of the clause are capable of being satisfied by reading them in the same way. I do not think that the company can bring themselves within those words merely by showing

that the disease from which the assured died was due to weakness consequent on the accident. They must show that it was a new and independent cause which intervened."

In the case of *Armstrong* v. *West Coast Life Ins. Co.* (1912), 41 Utah 112, 124 Pac. 518, the policy covered death as a result of accidental injuries caused solely by external, violent and accidental means. The physician testified that the immediate cause of the insured's death was pneumonia induced by his injuries, and that the injuries caused the pneumonia by lowering his vitality and allowing an entrance for the pneumococcus germ, making a fertile field for its development. He testified that the deceased's vitality was lowered and that he never got back to his usual health when the pneumonia developed. Pneumonia developed two days before the deceased died. He had no cold theretofore, and there was nothing to indicate why he should have pneumonia, except the injuries. The trial court refused to submit the case to the jury, and on appeal it was held to be error, the court saying: "The view entertained by the court that upon the evidence the death was not solely caused by the accident is not tenable." And quoting from *Western Commercial Travelers' Assn.* v. *Smith* (1898), 85 Fed. 401, 40 L. R. A. 653, the court further says: " 'If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injuries, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about this fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the *causa*

MAY TERM, 1921.                169

Robinson *v*. National Life, etc., Ins. Co.—76 Ind. App. 161.

*causans,* the accident alone.'" The company was held liable under the policy.

We find no case in Indiana so directly in point as the foregoing cases involving pneumonia, but the case of *National Benefit Assn.* v. *Grauman* (1886), 107 Ind. 288, 7 N. E. 233, gives us the general principle. In that case it was stipulated in the policy that the benefits of the same should not extend to any case where the death or disability should occur in consequence of disease. It appeared by the complaint that the assured sustained bodily injuries occasioned by two separate falls which resulted in apoplexy and death, and the court held that the injury, resulting from the fall, produced a condition amply designated by the name of apoplexy, did not render it any less the cause of the death.

In the case of *Aetna Life Ins. Co.* v. *Fitzgerald* (1905), 165 Ind. 317, 75 N. E. 262, 1 L. R. A. (N. S.) 422, 112 Am. St. 252, 6 Ann. Cas. 551, the policy insured against loss resulting from bodily injuries through external, violent and accidental means. The assured while asleep rested his hand upon the edge of the bed rail and continued in that position until 4 o'clock in the morning. When he awoke his hand pained him and as a result of the pressure from the hand there was later an inflammation of the periosteum of the meta carpal bones resulting in making an operation necessary and causing a protracted illness. The court says: "It is a general understanding that this class of policies insures against disease so occasioned, and where medical science reveals the fact that back of the disease stands the proximate cause answering in all respects to the terms of the policy it will not suffice to discharge the company that the consequence is accounted the disease."

We hold from the facts in this case as stated in the

special finding of facts, that the court erred in its conclusions of law. The judgment is therefore reversed, with instructions to the trial court to restate its conclusions of law in favor of appellant, and to render judgment against appellee, in harmony with its conclusions.