[No. 23244. Department One. September 2, 1931.]

VERA HANLEY, *Respondent,* v. OCCIDENTAL LIFE INSURANCE COMPANY, *Appellant.*[1]

Richards, Gilbert & Conklin, for appellant.

James H. Hanley and Robertson & Smith, for respondent.

[1] Reported in 2 P. (2d) 636.

Parker, J.—The plaintiff, Mrs. Hanley, commenced this action in the superior court for Spokane county, seeking recovery upon a death indemnity rider attached to an accident and sickness indemnity policy of insurance issued to her deceased husband, Daniel C. Hanley, by the defendant insurance company. The cause proceeded to trial in that court, sitting with a jury, and resulted in a verdict awarding to Mrs. Hanley recovery in the full amount of the insurance specified in the death indemnity rider, she being the beneficiary named therein. Final judgment was by the court rendered accordingly, from which the insurance company has appealed to this court.

The policy was issued March 10, 1926, and, apart from the death indemnity rider attached thereto, reads, in so far as need be here noticed, as follows:

"No. 967059

"Occidental Life Insurance Company, Los Angeles, California, (Hereinafter Called the Company), In Consideration of . . . Hereby Insures (subject to all provisions and limitations hereinafter contained) Daniel C. Hanley (hereinafter called the Insured, . . . ) . . . Against loss resulting directly, exclusively and independently of all other causes from bodily injury sustained, while this policy is in force; solely through external, violent and accidental means; and, Against loss resulting from bodily sickness or disease, which is contracted and begins while this policy is in force. . . .

"Part I. Schedule of Indemnities. Monthly Accident Indemnity One Hundred and no/100 Dollars ($100.00) (per month); Monthly Sickness Indemnity One Hundred and no/100 Dollars ($100.00) (per month).

. . . . . . . . . . . . .

"Part V. Special Indemnities. Loss resulting in whole or in part, from peritonitis, appendicitis, ptomaines, bites or stings of insects, hernia, orchitis,

lame back, strains, neuritis, dementia, locomotor ataxia, paralysis, carbuncles, boils, felons, ulcers, abscesses, tuberculosis, blood poisoning, infection or contact with poisonous or infectious substances is hereby classified as resulting from sickness, the original cause of such loss or of the ailment causing the loss notwithstanding, and indemnity shall be payable for such loss only as provided in Part VI, and no other indemnity shall be payable for such loss.

"[Part VI relates only to time loss for sickness.]

"STANDARD PROVISIONS. . . .

"4. Written notice of injury or sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury, or within ten days after the commencement of disability from such sickness. In event of accidental death immediate notice thereof must be given to the Company."

The death indemnity rider was attached to the policy on the same day the policy was issued, and reads, in so far as need be here noticed, as follows:

"OCCIDENTAL LIFE INSURANCE COMPANY
Los Angeles, California
(Hereinafter called the Company)
DEATH INDEMNITY RIDER

Attached to and made a part of Policy No. 967059

"For the consideration expressed in the policy to which this rider is attached, the Company hereby insures (subject to all provisions and limitations hereinafter contained and contained in the above numbered policy) Mr. Daniel C. Hanley (Hereinafter called the Insured) against loss of life resulting directly, exclusively and independently of all other causes from bodily injury sustained while the above numbered policy and this rider are in force solely through external, violent and accidental means (suicide, sane or insane, excepted); and provides that

"If, within ninety days from the date of the accident, the Insured shall, as a direct and independent result of such injury as is before described, suffer

LOSS OF LIFE

the Company will pay Four Thousand and No/100 Dollars, . . . to Vera Hanley, wife and beneficiary of the Insured.''

On June 23, 1929, Mr. Hanley was seriously injured by his falling from a chair on which he was standing to write on a blackboard in his office. The injury was to the inner side of his leg at about half way between his knee and ankle. Soon thereafter on that day, he called upon Dr. Kearns for advice and treatment. Dr. Kearns advised him to take a taxicab and go home and put hot applications on his injured leg. This he did. He went to his office the following day, though it was then necessary for him to use both a crutch and a cane to move about on his feet. Thereafter, he was able to be at his office only a few times, but was not thereafter able to perform any substantial portion of his usual work there. On June 29th, Dr. Kearns called Dr. Russell in consultation. They decided that the contusion should be opened. As to what they then did and their reason therefor was testified to by Dr. Kearns in part as follows:

''We made an incision maybe an inch or an inch and a half, and evacuated a large clot; that is, pressed out a large clot, I should judge about half an inch in thickness and about an inch and a half in diameter, and accompanying this was a fluid, heavy pus against the periosteum and underneath the periosteum. The periosteum is a thin lining—that comes over the bone, and when you get an injury to the bone the blood accumulates underneath there and separates the periosteum and denudes the bone and in that way the bone begins to degenerate.''

The testimony of Dr. Russell is of substantially the same import.

On July 14th, Mr. Hanley, having developed pneumonia symptoms, was removed to the hospital where

he remained until his death, which occurred on July 20th. Dr. Kearns attended Mr. Hanley daily after the operation until he died, except during the first two days Mr. Hanley was at the hospital, when he was attended by Dr. O'Neill, Dr. Kearns being then out of the city. Dr. O'Neill testified in part as follows:

"Q. And about when were you called? A. I was called the 14th of July, on Sunday morning. Q. What did you do? A. I examined Mr. Hanley and discovered that he was in a rather serious condition and persuaded him to go to the hospital. Q. And after that you called on him at the hospital? A. I did. Q. Will you tell as nearly as you recollect what his condition was? A. I was called on the case because Dr. Kearns was out of town, . . . After he went to the hospital I took care of him for two days, and I was at a loss to know just exactly what the trouble was. He did not have a typical pneumonia and still the symptoms pointed to a lung condition. Shortly before Dr. Kearns got home I made up my mind that he did have a pneumonia, and on Dr. Kearns' return I put him in charge of the case again because I felt that the family would be more satisfied on account of the condition of the patient. Q. [Here follows a hypothetical question addressed to Dr. O'Neill, stating hypothetically what had occurred to Mr. Hanley and his resultant injuries and treatment thereof up to the time of his death, including Dr. O'Neill's own knowledge of the case, the question concluding] : To what in your opinion would you attribute his death? A. My opinion is that he died of a septic pneumonia brought about in all probability by the original injury to his leg."

Dr. Kearns, being well acquainted with the nature and effect of Mr. Hanley's injury by his continued attendance on Mr. Hanley from the day of his injury to the day of his death, was, as a witness, asked and answered as follows:

"Q. What in your opinion was the cause of Mr. Hanley's death? A. It was septic pneumonia, which was caused first by the blood producing an infection

which infected the blood vessels and when he got up and moved about an infected portion of the blood vessels got detached and lodged in his right lung and produced septic pneumonia in his right lower lobe. It was the initial injury that produced the infection and the infection caused the pneumonia.''

This opinion testimony of Drs. Kearns and O'Neill is not, as we view the record, contradicted in any decisive manner by any other medical testimony. All that we have pointing in any degree to the contrary is the opinion testimony of Dr. Bird given wholly in response to a hypothetical inquiry, Dr. Bird having no knowledge whatever otherwise of Mr. Hanley's injury, its subsequent development or fatal consequence. The concluding words of the hypothetical question addressed to Dr. Bird are:

''Could you say as a physician whether or not the accident had under those circumstances anything to do with the pneumonia or death?''
to which he answered, ''No.'' He was further asked: ''What would be the probability under the facts recited of there having been an embolism lodging in the lung?'' to which he answered: ''I cannot say that there is very much probability of such a thing having occurred.''

It is contended in behalf of the insurance company that the evidence fails to show that the injury to Mr. Hanley's leg was the proximate cause of his death, within the meaning of the language of the policy and death indemnity rider reading:

''Against loss resulting directly, exclusively and independently of all other causes from bodily injury sustained, . . . solely through external, violent and accidental means; . . .''
and that it should have been so decided as a matter of law by the trial court.

■ Problems of this nature have many times been presented to the courts and have, so far as we are advised, been, with few, if any, exceptions, solved in harmony with the general rule

" . . . that ordinarily the direct and proximate cause is that which sets in motion a train of events which brings about a result without the intervention of any force operating or working actively from a new and independent source,"

as stated in Volume 6, Crouch Cyclopedia of Insurance Law, § 1471.

Our own decision in *Day v. Great Eastern Casualty Co.,* 104 Wash. 575, 177 Pac. 650, is in full harmony with this general rule. In that case, the language of the policy was, in substance, the same as in this policy last above quoted. The insured was accidentally injured by a bruise which developed into a carbuncle, resulting in his death. Holding that the bruise caused his death, Judge Mount, speaking for the court, said:

"This bruise continued to grow worse and developed into a carbuncle, and the carbuncle, after it was lanced, developed an infection which caused the death of deceased. This clearly made a *prima facie* case of death from external, violent and accidental means. In order to show that the death was not caused by external, violent, accidental means it was necessary to show that there was some other cause. The evidence falls far short of showing any other cause.

"The rule in cases of this kind is fairly stated, we think, in *White v. Standard Life & Accident Ins. Co.,* 95 Minn. 77, 103 N. W. 735, 884, as follows:

" 'Similar policies have been before both the state and federal courts, and the consensus of judicial opinion is that, subject to the exceptions contained in the policy, if the injury is the proximate cause of death, the company is liable, but, if an injury and an existing bodily disease or infirmity concur and co-operate to that end, no liability exists. If, however, the injury be the cause of the infirmity or disease—if the disease

results and springs from the injury—the company is liable, though both co-operate in causing death. The distinction made in this particular is found in that class of cases where the infirmity or disease existed in the insured at the time of the injury, and, on the other hand, that class of cases where the disease was caused and brought about by the injury. And even in cases where the insured is afflicted at the time of the accident with some bodily disease, if the accidental injury be of such a nature as to cause death solely and independently of the disease, liability exists.'

"We think it is plain from the evidence that the bruise was the primary cause of death; it developed into a carbuncle and an infection which caused the death."

Our later decisions in *Rorabaugh v. Great Eastern Cas. Co.,* 117 Wash. 7, 200 Pac. 587, and *Carpenter v. Pacific Mut. Life Ins. Co.,* 145 Wash. 679, 261 Pac. 792, are in substance the same.

In *Western Commercial Travelers' Ass'n v. Smith,* 85 Fed. 401, decided in 1898, there was drawn in question a controversy similarly circumstanced as to the language of the policy, the original injury and the result thereof following leading to death. Judge Sanborn, speaking for the Federal circuit court of appeals for the 8th circuit in a much cited case, said:

"If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and

the death is attributable, not to the disease, but to the *causa causans,* to the accident alone.''

In *Delaney v. Modern Accident Club,* 121 Ia. 528, 97 N. W. 91, 63 L. R. A. 603, decided in 1903, there was drawn in question the problem substantially as it is here presented, wherein Justice McClain, speaking for the court, said in part:

''The simple question is whether the death of Delaney resulted, through natural causes, without the interposition of a new and independent cause, from the cut on his finger. Disease brought about as the result of a wound, even though not the necessary or probable result, yet if it is the natural result of the wound, and not of an independent cause, is properly attributed to the wound; and death resulting from the disease is a death resulting from the wound, even though the wound was not, in its nature, mortal or even dangerous. Even though the wound results in disease and death through the negligence of the injured person in failing to take ordinary and reasonable precautions to avoid the possible consequences, the death is the result of the wound. There is really no conflict in the authorities on this question, . . . ''

In *Robinson v. National Life & Accident Insurance Co.,* 76 Ind. App. 161, 129 N. E. 707, decided in 1921, there was drawn in question an accidental physical injury which resulted in pneumonia and death. Judge Nichols, speaking for the court, and adopting with approval the .language of the Missouri court, made these very enlightening observations:

''We do not view the pneumonia as one of two independent causes, the sum of which produced the death of the insured, but rather as one of the links in the chain of causation, and that the accident and the injury resulting therefrom is the proximate cause.

''In *Driskell v. U. S. Health & Accident Ins. Co.,* 117 Mo. App. 362, 93 S. W. 880, the provision in the policy was 'if death should result solely from such injuries,' and the court said:

" 'We think the only reasonable interpretation to be placed upon this clause is to say that the injury must stand out as the predominant factor in the production of result and not that it must have been so virulent in character as necessarily and inevitably to have produced that result regardless of all other conditions and circumstances. People differ so widely in health, vitality and ability to resist disease and injury, that what may mean death to one man would be comparatively harmless to another and, therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions; and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death, without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death. The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.' "

In *Kangas v. New York Life Insurance Co.*, 223 Mich. 238, 193 N. W. 867, decided in 1923, there was involved the language of an accident insurance policy substantially as above quoted from this policy, and an accidental injury to the insured resulting in septicemia causing his death. Holding that the beneficiary of the insured was entitled to recover upon the policy, Justice McDonald said:

"In most cases a policy of this character would be of little or no value to the insured if the limiting language be literally interpreted as claimed by the defendant. Death from an external injury, unless instantaneous, is usually the result of various concurring causes. The injury sets in motion other agencies and awakens dormant internal ailments which contribute

to death. These are conditions rather than causes. If such insurance contracts are to be of any value to the man who pays for the risk assumed, a construction as fair and reasonable as the limiting language will permit should be placed upon them;"

citing and quoting with approval the language of the Missouri court quoted in *Robinson v. National Life & Accident Insurance Co.,* above noticed.

We have noticed these leading decisions in order of date to show the chronological trend of the decisions upon this subject. In them are cited numerous other decisions of the same import. We are of the opinion that the evidence was such as to support the jury's finding that Mr. Hanley's injury to his leg became the cause of his death, within the meaning of the above quoted portions of this policy and death indemnity rider attached thereto.

■ It is further contended in behalf of the insurance company that, though the last above quoted language of the policy and rider, standing alone, would lead to the conclusion we have above announced, the language of "Part V. SPECIAL INDEMNITIES," absolved it from this claim of death liability. It may be that this special indemnity language in the original policy should be somewhat strictly applied as limiting those stated afflictions to sick benefits to be paid to the insured; but we think the death indemnity rider should not be held to be so limited in its effect.

In *Cary v. Preferred Accident Insurance Co.,* 127 Wis. 67, 106 N. W. 1055, 5 L. R. A. (N. S.) 926, 115 Am. St. 997, it seems to us can be found the answer to this contention. A policy similar to this in its general terms as to accident and death insurance, contained the special provision under which the insurance company was claiming exemption, reading as follows:

"(1) This insurance does not cover . . . any case of disability or death whatever, except where the

claimant shall furnish to the company direct and positive proof that such disability or death resulted proximately and solely from accidental causes; (2) nor injury, fatal or nonfatal, resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled; (3) nor death . . . nor disability resulting either directly or indirectly, wholly or in part, from any of the following acts, causes, or conditions: . . . Bodily infirmity or disease of any kind.''

The jury found specially:

''Did the death of Eugene Cary result proximately and solely from bodily injury caused by external, violent, and accidental means? A. Yes. Was the immediate cause of the death of Eugene Cary infection from bacteria, producing the septicemia aforesaid? A. Yes.''

The beneficiary wife of the deceased was awarded recovery. Justice Siebecker, speaking for the court in so holding, made these observations:

''The policy exempted the defendant from any liability for any injury 'resulting from any poison or infection, or from anything accidentally or otherwise taken, administered, absorbed, or inhaled.' Exemption from liability is claimed under this provision, under the jury's finding that 'the immediate cause of the death of Eugene Cary [was] infection from bacteria producing the septicemia.' This provision of the policy exempts defendant from liability in case Mr. Cary's death *was caused by* poison or infection. Nothing further need be said to refute the idea that bacterial infection proximately caused his death under the terms of the policy. This provision of the policy is an exemption from liability only where the resultant injury was proximately caused in the manner specified in the provision. We have shown that the infection which produced the septicemia, which the jury found was the 'immediate cause' of death, cannot be held to be its proximate cause, and therefore it does not come within the terms of this exemption. Since

the verdict negatives any claim that death was produced by poison or from anything 'accidentally or otherwise taken, administered, absorbed, or inhaled,' we need not further consider this exception. In so far as there was a conflict in the evidence on this question it has been resolved in plaintiff's favor by the jury.

"Another exemption agreed upon by the parties is that defendant should not be liable for death 'resulting, either directly or indirectly, wholly or in part, from . . . bodily infirmity or disease of any kind.' The facts as found exclude the idea that Mr. Cary was afflicted with any bodily infirmity or disease other than septicemia induced by bacterial infection entering through the abrasion of the skin. The exemption manifestly cannot apply to this bodily infirmity or disease, the result of the accident; for, if it were treated as within the exemption, then it would be difficult to conceive of liability under any circumstances under insurance against effects of bodily injury caused solely by external, violent, and accidental means. In the very nature of things injury resulting from such an accident must be accompanied by some bodily infirmity in the general sense, and probably by disease in some form and degree, which in some measures contribute to the resulting disability or death."

In *Continental Casualty Co. v. Colvin,* 77 Kans. 561, 95 Pac. 565, a very similar problem was presented and disposed of by the court in harmony with and along the same line of reasoning, as found in the above noticed Wisconsin decision. The only decision coming to our notice in which the majority opinion may seem contrary to this view is that of *Anderson v. Great Eastern Casualty Co.,* 51 Utah 78, 168 Pac. 967, L. R. A. 1918B 1194. That decision, however, was rendered by a bare majority of the court, three judges concurring in the majority opinion and two dissenting. There is room for arguing that the facts there involved are distinguishable from the facts here involved; if

not, however, we feel constrained to disagree with the majority holding in that case.

It is contended in behalf of the insurance company that Mrs. Hanley should be denied recovery because of failure of notice, as provided by § 4 of the Standard Provisions of the policy, above quoted. We concede that there was failure to give notice to the company of the injury to Mr. Hanley within the ten and twenty days' limitations provided therein for claiming of accident and sick benefits. This, it is argued, was such failure of notice as to preclude effective claim by Mrs. Hanley of the death indemnity. It is plain that Mrs. Hanley gave the company immediate notice of Mr. Hanley's death, claiming her right to payment of the $4,000 death indemnity as the result of his accidental death. This contention, we think, is effectively answered by the decision of the Federal circuit court of appeals for the 8th circuit in *Western Commercial Travelers' Ass'n v. Smith,* 85 Fed. 401, which we have above noticed touching the other branch of our inquiry. Judge Sanborn, speaking for the court, said:

"The agreement of the parties was that the failure to give the notice required by this certificate should invalidate all claim under it, and there can be no question but that the service of this notice was a condition precedent to the enforcement of any such claim. *Insurance Co. v. Kyle,* 11 Mo. 278, 289; *McCullough v. Insurance Co.,* 113 Mo. 606, 21 S. W. 207; *McFarland v. Association,* 124 Mo. 204, 27 S. W. 436. The real question here is, therefore, what was the notice exacted of the beneficiary by the contract and when was it to be given? The agreement was that, 'in the event of any accident or injury for which any claim shall be made under this certificate, or in case of death resulting therefrom, immediate notice shall be given.' In the interpretation of this provision, the fact must be borne in mind that all claims under this contract for acci-

334

dents and injuries which do not result in death accrue to the member himself. The beneficiary of the death loss has no interest in them. It is only in a case in which death results from an accident or injury that any claim in favor of the defendant in error arises. In the nature of things, she cannot know whether she will have a claim until the member whose life is insured for her benefit is dead. Must she give notice of the accident or injury on account of which her claim may arise before she knows whether or not it will ever come into existence? A provision which exacts such a notice should be plain, clear, and unambiguous. Forfeitures are not favored in the law, and a strained and unnatural construction must not be given to this contract in order to impose one here. A stipulation could have easily been drawn which would have plainly imposed upon this beneficiary the duty of giving such a notice. If this contract had simply omitted the words, 'or in case of death resulting therefrom', and had provided that, 'in the event of any accident or injury for which any claim shall be made under this certificate, notice of such accident or injury shall be given immediately after it happens,' there would have been no doubt that the beneficiary was required to notify the association of the accident as soon as it occurred. If it had required only that, 'in case of death resulting from any accident or injury for which any claim shall be made under this certificate, immediate notice shall be given,' it would have been equally certain that she was not required to give any notice until the death had supervened. As it stands, it seems to us to be intended to provide two different classes of notices for the two classes of claims,—one an immediate notice of the accident or injury which does not result in death, the other an immediate notice of the death which results from such an accident or injury, to be given by the beneficiary as soon as it occurs. If this is not the correct construction of the provision, the words, 'or in case of death resulting therefrom,' are without significance or effect, because the stipulation, without those words, would require the beneficiary of a death loss to give notice of the accident or injury immediately after it occurred.''

See; also, *Continental Casualty Co. v. Colvin,* 77 Kans. 561, 95 Pac. 565.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, HOLCOMB, and MAIN, JJ., concur.