## STANDARD ACCIDENT INS. CO. OF DETROIT, MICH., v. HEATFIELD.

### No. 10517.

Circuit Court of Appeals, Ninth Circuit.

March 23, 1944.

Rehearing Denied May 17, 1944.

M. E. Mack, of Spokane, Wash., for appellant.

Harry M. Morey, of Spokane, Wash., for appellee.

Before GARRECHT, DENMAN, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

An action was brought in the Superior Court of the State of Washington for $7,500 by plaintiff as beneficiary of an insurance policy issued by defendant insurance company to plaintiff's deceased husband. The action was removed to the federal District Court on the ground of diversity of citizenship of the parties, as plaintiff was a citizen of Washington and defendant was a corporation of Michigan, and as the amount in controversy exceeded $3,000. After a jury trial verdict and judgment were rendered in favor of plaintiff. Defendant appeals.

By the terms of the policy defendant insured plaintiff's husband in the principal sum of $7,500 against "loss from bodily injuries effected directly, exclusively and independently of all other causes through accidental means except when intentionally self-inflicted." In case of loss of life the principal sum was payable to the beneficiary specified. Plaintiff bases her right to recovery on the theory that her husband died of heart failure directly resulting from over-exertion experienced when he attempted to put his car on the road after it had skidded into a ditch, and therefore that he lost his life through accidental means. Defendant makes no argument against the proposition that a death by unusual exertion is death by accidental means under the policy.

The evidence shows that Heatfield was an insurance agent. He was a normally healthy man of sixty-five and of a somewhat nervous temperament. He was unaccustomed to strenuous physical exercise. On June 30, 1942, he seemed in his usual good health, in the morning when he left his wife and about three o'clock in the afternoon when he talked to a friend. About six o'clock in the evening Ralph Harrington and his wife were driving over a narrow, mountain road when they saw Heatfield signaling for help. His car was in an awkward position with three wheels over the bank at the edge of the road. Heatfield was alone and looked hot and exhausted, both Harringtons noticed.

Harrington observed that there was a big pole underneath the car and a large rock in front of one rear wheel, that dirt had been shoveled near the car, and that there was a shovel in the turtle-back of the coupé. According to Harrington, "the car was there to stay without help," and "the only possible way he could get out was to be pulled out." Harrington towed the car out of the ditch, Heatfield guiding it.

Over objection Mrs. Harrington was allowed to testify to a conversation which occurred while her husband was preparing to tow the car. Heatfield held his hands over his left side, complained of a severe pain in his heart, and declared it was the first time he had been troubled by his heart. He remarked that he had tried to right his car but could not accomplish the feat by himself. He said that he had been stalled for two hours but had had to lie down for an hour because he had become hot and exhausted. The testimony was admitted as part of the res gestae.

Tom Heatfield, the son of deceased, traveled over the road three days later and, at the place where he thought the accident had occurred, saw that a log had been backed by rocks and banked with dirt and had been placed in such a position as to form a track to the shoulder of the road from the ditch.

After his car was pulled back on the road, Heatfield drove about two miles to a forest ranger camp, where he had a drink of water. One ranger saw him bent over and sick. A little later he called out, the rangers found him lying by the side of his car. As they helped him the short distance to the camp and put him to bed, he was slightly nauseated. The next morning they found him dead. Heatfield's statement to one ranger that he had over-exerted himself was admitted over objection as part of the res gestae.

When Heatfield's clothes were returned to plaintiff after his death, she noticed that his shirt was stained with perspiration about the shoulders and collar.

An autopsy showed arterio-sclerosis, or thickening of the walls of the blood vessels, to an extent normal in a man of Heatfield's age. Two doctors were of the opinion that death resulted from an insufficiency in the supply of blood to the heart muscle through the narrowed coronary blood vessel and that the insufficiency was caused by over-exertion or strain. Another doctor was of the opinion that if exercise caused an angina pectoris, that is a cramp-like pain in the chest, severe pain would have continued until death without any interim period of comparative comfort, and that exercise in the instant case had no bearing whatever on the subsequent death. A fourth doctor was indefinite as to the exact cause of death but did not think that exercise was an important factor.

The insurance policy on which recovery is sought required that "written notice of injury on which claim may be based" be given within twenty days after the accident causing the injury. The notice could be given either to the defendant Company or to an authorized agent and was to include "particulars sufficient to identify the insured." Provision was made for notice within a reasonable time if the giving of it within the prescribed time was not reasonably possible. The Company undertook to furnish forms for proof of loss within fifteen days after receipt of notice of injury; if it failed to furnish them, "written proof covering the occurrence, character and extent of the loss for which claim is made" would be sufficient. Such proof of loss was to be made within ninety days after the date of loss. Full compliance with the terms of the policy was made a condition precedent to recovery.

On July 8, plaintiff's attorney wrote the Company's agent in Seattle referring to the accident policy by number, stating the fact and date of Heatfield's death, mentioning the probability that a claim would be made under the policy, and discussing a date for an autopsy. On July 30, plaintiff's attorney again wrote the Company briefly outlining the facts leading to the death and claiming

payment of the face value of the policy. The attorney also asked reimbursement for a part of the pathologist's fee for the autopsy, which was attended by a doctor on behalf of the Company. On August 25, plaintiff sent to the Seattle agent of the Company a sworn statement setting forth the facts of the exertion and death and claiming payment under the policy. The court decided that as a matter of law proper notice had been given and proof of loss furnished under the policy, and the jury was instructed to that effect.

Appellant-Company specifies as error the denial of its motions for dismissal, for directed verdict, and for the entry of judgment in favor of appellant or in the alternative for a new trial. Appellant also questions the admission of evidence offered by appellee. Specifically, appellant urges that notice of injury to the Company, as given herein, was not sufficient as a matter of law and that certain evidence was improperly admitted as part of the res gestae.

█ There is no question that compliance with the notice provisions of the insurance policy is a condition precedent to recovery herein. Hanley v. Occidental Life Ins. Co., 164 Wash. 320, 2 P.2d 636, 641; Buckley v. Massachusetts Bonding & Ins. Co., 113 Wash. 13, 192 P. 924, 932. The terms of the policy are very simple, requiring merely "written notice of injury on which claim may be based" "with particulars sufficient to identify the insured" within twenty days after the accident. The letter of July 8 followed the injury of June 30 within the twenty-day period. Consequently, our only inquiry is whether the text of that letter constituted notice.

█ We believe, in accord with the District Court, that under the terms of the particular policy here in issue, sufficient notice was given the insurance company. It must be remembered that the policy insures against only two things: (1) loss from bodily injuries effected accidentally, and (2) death resulting therefrom. The July 8 communication was headed by a reference to "Augustus S. Heatfield Standard Accident Policy #97R1387 Renewal number 706997." The terms of the letter were thus restricted to that policy, which deals only with accidental injury or death. The first sentence stated the fact of death and thereby negatived any implication of injury alone. As a result, when the letter declared that a claim for payment under

the accident policy would probably be made, only one inference was possible, the occurrence of an accidental death which the beneficiary believed invoked the terms of the policy. No particulars of accident or injury were required by the policy to be included in the notice, and the name of the insured together with policy and renewal numbers were sufficient particulars to identify the insured as far as the Company was concerned. The discussion of a date for an autopsy of Heatfield's body and the offer to the Company of the opportunity to make the autopsy or to be represented at its taking, as contained in the letter of July 8, strengthen the conclusion that the letter gave definite notice of an accidental death under the policy.

Appellant emphasizes the omission in the letter of any suggestion as to the accidental nature of the death and of any information as to the facts of the accident. To support his argument, appellant cites four cases dealing with proof of death by accident (Commercial Casualty Ins. Co. v. Stinson, 6 Cir., 111 F.2d 63; Barnett v. John Hancock Mut. L. Ins. Co., 304 Mass. 564, 24 N.E.2d 662, 126 A.L.R. 608; Wachtel v. Equitable Life Assur. Soc., 266 N.Y. 345, 194 N.E. 850; City Bank Farmers T. Co. v. Equitable Life Assur. Soc., 246 App.Div. 256, 285 N.Y.S. 250), two dealing with the time within which notice must be given (Wilcox v. Massachusetts Protective Ass'n, 266 Mass. 230, 165 N.E. 429; Hanley v. Occidental Life Ins. Co., 164 Wash. 320, 2 P.2d 636), and two involving the contents of a notice under a policy demanding the fullest information obtainable in the notice (Lewis v. Commercial Casualty Ins. Co., 142 Md. 472, 121 A. 259, 28 A.L.R. 1287, which deals principally with the element of time but is cited by appellant on the issue of content; Moran Bros. Co. v. Pacific Coast Casualty Co., 48 Wash. 592, 94 P. 106).

The case of Thompson v. United Casualty Co., 296 Mass. 507, 6 N.E.2d 769, is not contrary to the views herein set forth when it states, in connection with a policy insuring against loss from accidental death or disability and requiring immediate notice of death: "But notice of death alone is not enough. The policy is not a life insurance policy. It insures against death resulting from accident, and the notice which is expressly required is notice of 'accidental death.' At least the notice must be such as under the existing circumstances will by

fair construction inform the company that the insured has met death through accident." That case involved the sufficiency of oral notice by means of informal conversations, and the court found that there was nothing in any of the conversations that would suggest accident. The instant case is clearly distinguishable on the facts and satisfies the last sentence quoted with which we agree.

Appellant claims error in the admission of the testimony of Mrs. Harrington and the forest ranger concerning deceased's statements of pain and exertion. It contends that Heatfield's remarks were hearsay and, being made at least an hour and an hour and a half respectively after the exertion took place, were not sufficiently spontaneous to constitute part of the res gestae.

■ Under the Washington rule, as set forth in Beck v. Dye, 200 Wash. 1, 92 P.2d 1113, 1117, 127 A.L.R. 1022, statements must meet certain requirements to be admissible as part of the res gestae: "(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

■ Heatfield's statements characterized and explained the main event, which was the exertion. They did not constitute his opinion; extreme exertion and pain would be, to him who experiences them, facts sufficient to satisfy the theory of admissibility as part of the res gestae. The declarations were made by the only participant in the accident; he suffered severe pain from the time of the exertion until some time after he made the statements in question; it was pain which was followed by his death within twelve hours and pain which, according to the testimony, was excruciating. Such anguish negatives the existence of reflective thought. There is nothing in the evidence arousing any suspicion of deliberation on the part of the declarant, but on the contrary there is every appearance of spontaneity. We find no such clear error that the discretion of the trial judge, exercised in favor of admitting the evidence, must be disturbed. Fort Street Union Depot Co. v. Hillen, 6 Cir., 119 F.2d 307, 311; Rast v. Mutual Life Ins. Co., 4 Cir., 112 F.2d 769, 774; William C. Barry, Inc., v. Baker, 1 Cir., 82 F.2d 79, 82; Hines v. Foster, 166 Wash. 165, 6 P.2d 597, 599; Starr v. Ætna Life Ins. Co., 41 Wash. 199, 83 P. 113, 116, 4 L.R.A.,N.S., 636; Roberts v. Port Blakely Mill Co., 30 Wash. 25, 70 P. 111, 113.

■ Tom Heatfield's testimony as to the locality and conditions of the place of the accident was properly admitted, contrary to appellant's argument that the place was not sufficiently identified as the one where his father's car had gone off the road. Three days after his father's experience, he inquired at the forest ranger camp as to the locus of the accident and was told by one Abrahams where it had taken place. Harrington gave him similar information. He took some pictures of what he thought the proper spot. The pictures were introduced into evidence, and one was shown Harrington, who testified that it "looks like the road there." The jury was properly permitted to determine whether the son's statements referred to the same place as that where his father's car was stalled.

■ Appellant contends that there was no evidence of over-exertion on the part of Heatfield or of death by accidental means. Heatfield, although of a nervous temperament, was in good health the afternoon of June 30. He had never been aware of any heart trouble. He was not accustomed to hard exercise or manual labor. No one actually observed him doing anything, but the Harringtons saw him about six o'clock looking exhausted. His car was in a ditch; a rock was under the car; a log was near it and a good deal of dirt had been shoveled. There was a shovel in the back of his car. He told Mrs. Harrington that although he had tried, he could not work his car out of the ditch by himself, that he

became so exhausted he had to lie down, and that he had a pain in his heart. He drove two miles to the forest ranger camp, where a ranger saw him bent over and sick; he told the ranger he had over-exerted himself. The shirt he was wearing, when returned to his wife after his death, showed that it had been soaked with perspiration around shoulders and collar. He died during the night. Two medical experts thought that death resulted from myocardial insufficiency caused by over-exertion; two thought death resulted from natural causes. The evidence justifies an inference that Heatfield was unaccustomed to strenuous exercise and that he died as a result of physical strain experienced when he tried to right the position of his car on June 30. Therefore, we think the evidence was sufficient to warrant its submission to the jury.

Several errors are specified by appellant but are not supported by argument in its brief; therefore, they may be disregarded. However, we have considered them all but find no error.

Affirmed.