[No. 25881. Department Two. December 9, 1935.]

ROBERT S. KEARNEY, *Respondent*, v. WASHINGTON NA-
TIONAL INSURANCE COMPANY, *Appellant*.[1]

*DuPuis & Ferguson,* for appellant.

*Kennedy & Schramm* and *Emil G. Gustavson,* for
respondent.

[1]Reported in 52 P. (2d) 903.

Main, J.—This action was brought to recover upon an accident insurance policy. The defendant denied liability and, as an affirmative defense, pleaded certain provisions of the policy which, it claimed, exonerated it from liability. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff. The defendant moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial, both of which motions were overruled. Judgment was entered against the defendant in the sum of $921, from which it appeals.

The facts necessary to present the questions here for determination may be summarized as follows: The respondent, during the year 1906, went to Alaska, and sometime thereafter had what is called snow blindness, which troubled him for a short period of time. He also had ptosis, which is the medical term for drooping eyelids, but these had at no time given him serious trouble. He returned from Alaska in 1916, and at that time was troubled with rheumatism, which would appear to come and go, but he was not disabled thereby. His treatment therefor was the application of what may be called home remedies.

In the year 1917, after the respondent's return to Seattle, he was employed as a watchman upon one of the docks of the port of Seattle, and held that position until September 14, 1934, when he sustained the injury for which this action was brought.

In 1922, he applied to the appellant for the accident policy involved in this action. This policy provided that, in order to recover thereunder, the bodily injuries sustained by the insured must be through external, violent and accidental means, and not directly or indirectly from any other cause or causes. In the application for the policy, one of the questions was whether the applicant had been disabled either by accident or

illness, "or received medical or surgical attention during the last ten years," which was answered in the negative.

On the night of September 14, 1934, while the respondent was engaged in the line of his duties as watchman, he fell down a flight of stairs, twelve or thirteen steps, struck his head, and, when he got up, as he testified, everything appeared to be dark. Soon thereafter, his wife came to the dock for the purpose of taking him home shortly after eleven o'clock, which was the time of his last round of inspection on the dock. She accompanied him on the eleven o'clock inspection, and then they went home. On the following morning, when the respondent awoke, he testified that he was blind.

In 1931, he had an injury to one of his knees, for which the appellant paid time loss. At this time, the respondent learned that, in his left eye, he only had about twenty per cent normal vision. His family physician, who had attended him for a period of ten years, testified that, shortly prior to the time of the accident when he examined him, he was in good health, with the exception of the condition of his eye, which had been impaired for a period of about ten years. In his regular duties on the dock, it was necessary for the respondent to read dials, make memoranda, and, as one of his superiors testified, he did his work well.

 It is first contended that the appellant is relieved from liability because the respondent, in his answer to the question above mentioned in his application, did not mention the snow blindness, the rheumatism, or the drooping eyelids. Assuming, without so deciding, that these were matters which it was the duty of the applicant to state in response to the question, it does not follow that his failure to do so voids the policy, because even though they should have been stated,

the failure to state them does not defeat the action unless he refrained from stating them with actual intent to deceive. Rem. Rev. Stat., § 7238 [P. C. § 3131-2d]. *Tison v. American National Ins. Co.*, 163 Wash. 522, 1 P. (2d) 859, 3 P. (2d) 998. *Brigham v. Mutual Life Ins. Co.*, 95 Wash. 196, 163 Pac. 380; *Eaton v. National Casualty Co.*, 122 Wash. 477, 210 Pac. 779; *McCann v. Reeder*, 178 Wash. 126, 34 P. (2d) 461. In this case, there was no evidence which would justify the court in holding, as a matter of law, that the respondent failed to disclose the matters mentioned with intent to deceive.

■ It is next contended that the respondent's condition of total, or almost total, blindness after the accident, which continued until the time of the trial, was due to arteriosclerosis in his left eye. Whether his condition at the time of the trial and after the accident was due to the fall, the expert testimony was directly in dispute. On the part of the appellant, it was testified that his condition was not caused by the fall, but was due to arthritis and arteriosclerosis, which was caused by some low-grade infection in his system. On the part of the respondent, it was testified that the condition was due to the fall.

The policy contained the provision above mentioned, to the effect that the disability must be such as is not contributed to directly or indirectly by disease or bodily infirmity at the time of the accident. With reference to the manner in which policies of insurance containing this or a similar provision should be construed, in *Kangas v. New York Life Ins. Co.*, 223 Mich. 238, 193 N. W. 867, it is said:

"In most cases a policy of this character would be of little or no value to the insured if the limiting language be literally interpreted as claimed by the defendant. Death from an external injury, unless instantaneous, is usually the result of various concur-

ring causes. The injury sets in motion other agencies and awakens dormant internal ailments which contribute to death. These are conditions rather than causes. If such insurance contracts are to be of any value to the man who pays for the risk assumed, a construction as fair and reasonable as the limiting language will permit should be placed upon them.''

The weight of the authorities and the decided trend of modern authority are to the effect that, where disease merely contributes to the death or accident, after being precipitated by the accident, it is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy.

In *United States Fidelity & Guaranty Co. v. Hood,* 124 Miss. 548, 87 So. 115, 15 A. L. R. 605, it is said:

''We think that, if the accident is a proximate cause of the death and sets in motion or starts a latent or dormant disease, and such disease merely contributes to the death after being so precipitated by the accident, it is not a proximate cause of the death nor a contributing cause within the meaning of the terms of the policy.''

The cases of *Druhl v. Equitable Life Assurance Soc.,* 56 N. D. 517, 218 N. W. 220, 60 A. L. R. 962, and *Benefit Ass'n of R. Employees v. Armbruster,* 224 Ala. 302, 140 So. 356, and numerous others that might be assembled, are to the same effect.

The rule stated has been applied in this state where an accident happens which is within the scope of the workmen's compensation act. *Frandila v. Dept. of Labor & Industries,* 137 Wash. 530, 243 Pac. 5; *Matela v. Dept. of Labor & Industries,* 174 Wash. 144, 24 P. (2d) 429; *Hadley v. Dept. of Labor & Industries,* 174 Wash. 582, 25 P. (2d) 1031; *Anderson v. Dept. of Labor & Industries,* 174 Wash. 702, 26 P. (2d) 77. We see no reason why the rule of those cases should not be applied

to an accident where the injured seeks to recover on a policy of accident insurance.

In this case, the court, by appropriate instructions, submitted the question to the jury as to whether the proximate cause of the respondent's condition was the accident which he sustained or the latent disease with which he was afflicted at the time. Under the evidence, the jury were warranted in finding for the respondent, and the trial court properly overruled the motion for judgment notwithstanding the verdict.

■ The appellant further contends that the court erred in permitting a medical witness, who was not an eye specialist, to express an opinion as to the cause of the respondent's condition. This witness had been the respondent's physician for a number of years and was well acquainted with his condition. It cannot be said that he was not competent to express an opinion as to what caused the loss of sight, and the weight of the testimony was for the jury.

■ It is also contended that the judgment should be for $1,500, the amount fixed in the policy for total blindness, rather than for the monthly payments upon which the verdict and judgment were based. The policy contained the provision that, in the event of "irrevocable loss of the entire sight of both eyes," the liability should be in the fixed sum of $1,500. The question whether the respondent at the time of the trial had irrevocably lost the entire sight of both eyes was submitted to the jury, and, under the instruction, they necessarily found that there had not been such an entire loss of sight of both eyes.

It may be admitted that the evidence is such that they had a right to decide either way on the question. The respondent testified that he had some sight and could see street cars and automobiles coming toward him, but that "everything looks so big. A man looks

as big as a house or a tree." Whether an operation removing cataracts would have improved the sight of the respondent, the doctors could not tell.

One of the doctors testified that the respondent had not irrevocably lost the sight of both eyes. Under the evidence, the court cannot hold, as a matter of law, that he had.

There is objection to two of the instructions, but these instructions contained correct statements of the law, as we view them, and were in accordance with the law as above stated.

The judgment will be affirmed.

HOLCOMB, BEALS, BLAKE, and STEINERT, JJ., concur.