[No. 26397.  Department Two.  December 23, 1936.]

MINNIE HEMRICH, *Respondent*, v. AETNA LIFE IN-
SURANCE COMPANY, *Appellant*.[1]

¹Reported in 63 P. (2d) 432.

*J. Speed Smith* and *Henry Elliott, Jr.,* for appellant.

*C. R. Hovey* and *McBurney & O'Brien* (*Clarence Lirhus,* of counsel), for respondent.

MITCHELL, J.—Minnie Hemrich of Seattle, as plaintiff, recovered judgment upon a verdict against the Aetna Life Insurance Company, a corporation, for the amount of an accident policy in the sum of $2,500, issued to Alvin Hemrich, her husband, who died February 25, 1935.

The insurance company has appealed.

The policy insured "against loss resulting, directly or independently of all other causes, from bodily injuries sustained and effected solely through accidental means." In another portion of the policy, there is a repetition, in effect, of the provision above quoted.

On January 17, 1935, the insured, while walking on the street, slipped and fell, fracturing the lower end of the fibula of his left leg. His family physician took charge of the case promptly, and seasonably discovered the fracture, and thereafter continued to care for it. The fracture made normal progress for awhile. Then it was found there was swelling of the left leg, which extended above the knee. The leg was congested, and a clump formed under the knee space of the left leg. The patient was later taken to a hospital. Varicosities appeared in the left leg. He complained of pain in the left groin, where a clot had formed. The insurance company, upon receiving notice of his condition, paid weekly indemnities during his sickness from the accident. On the morning of February 25, 1935, he rapidly grew worse at the hospital, and died suddenly.

Mrs. Hemrich's attorney was not in the city at that time, but returned during the day. The next morning, February 26th, he notified a representative of the insurance company that Mr. Hemrich had died. The

representative of the insurance company wired the home office that day of the death, and the following morning received answer instructing him to ask for an autopsy under the policy. The representative of the insurance company discussed the request for an autopsy with Mrs. Hemrich's attorney, who said, in effect, that it was all right to have an autopsy and asked the representative of the insurance company for blanks for that purpose. The company's representative referred him to Dr. Nixon of the Swedish Hospital for the necessary blanks.

It appears that Dr. Nixon, who was not advised of the purpose for which the autopsy was requested, furnished a blank to be filled in and signed by Mrs. Hemrich to indicate her consent that the Swedish Hospital might make such an autopsy and examination of the decedent's body as the hospital desired for a complete study of pathological changes in the internal organs, to complete the record of the case, from a general scientific standpoint that, in the future, patients might benefit from the knowledge gained, which is in accordance with a nation-wide policy of advancement of medical science. Of course, this showed a misunderstanding about the purpose and scope of the autopsy and for whose benefit it was wanted. The Swedish Hospital was in no way entitled to, nor did it intend to, procure any kind of an autopsy. It was the insurance company only that wanted, or was entitled to, one.

However, Mrs. Hemrich's attorney, according to instructions from the representative of the insurance company, took the instrument furnished by Dr. Nixon to her for consideration; and she, already deeply grief-stricken over the loss of her husband, upon noticing and being advised of the scope of the autopsy contemplated by that instrument, that is, an autopsy that covered the whole body of the decedent, unlimited as to

time for making an autopsy or when it should be made, and as though intended for general clinical purposes, refused to sign it.

Upon further consideration by the representative of the insurance company, a written request for an autopsy was again served on Mrs. Hemrich on behalf of the insurance company on that same day, four-thirty p. m., at her house, her attorney not being present. There was no attempt to explain to her to what extent, if any, this request differed from the other one. This request fixed or suggested no time for making the autopsy, nor was there any intimation as to the length of time desired or needed for making it; nor was there anything said about the extent of the autopsy or examination of the body of the decedent, the words of the written request in this respect being: "To consent to performance of an autopsy on the body of the insured, now deceased;" that is, unlimited. The funeral was already set for the next day, February 28th. This second request for permission to make an autopsy was refused by Mrs. Hemrich.

Discussing the assignments of error, two of them may be considered together; (1) refusal of the court to sustain a challenge to the sufficiency of the evidence to warrant a verdict for the plaintiff; and (2) the denial of a motion for judgment notwithstanding the verdict.

They relate to the cause of the death of the decedent and the right to an autopsy.

Upon the cause of the death of the decedent, the evidence was entirely sufficient to take the case to the jury. Mr. Hemrich's family physician took care of him immediately after the accident and looked after him until his death. Upon describing the injuries, symptoms, and treatment, the doctor testified:

"Q. Doctor, in your opinion, if you know, what was the cause of Mr. Hemrich's death? A. Do I know the

cause? Oh, yes. Thrombosis of the pulmonary artery. Q. What caused the thrombosis? A. It was due to this here injury he had of the leg, this here fracture and injury of the soft parts, the soft tissues, with an injury to the veins. It had injured the inside lining of the veins and this here clot of blood had formed there."

Upon the question of the request to make an autopsy, the weight of the authorities is to the effect that, under a policy such as the one in this case, the insurer is entitled to have an autopsy made, provided it is seasonably made and reasonable as to time and scope. There was considerable testimony upon this subject in this case, including some contention between the parties. Altogether, we are satisfied that the question of the cause of death of the decedent and the reasonableness and scope of the request to make an autopsy were properly submitted to the jury.

Another assignment of error raises the correctness of instruction No. 7. The effect of the language in the instruction complained of is that, if the jury find that the accident set in motion some latent physical defect or commenced systemic disorders, *and that the insured died as a result of the accident causing such disorders,* they should find that the insured's death was caused by reason of the accident, within the meaning of the policy. Surely, the instruction is right. If the accident caused a change in or upon the body of the insured that caused his death, manifestly the accident was responsible for the death.

It is claimed the giving of instruction No. 9 constituted error. It was as follows:

"You are instructed that if you find that the demand for an autopsy was not seasonably and reasonably made, then you should find the plaintiff was justified in refusing the demand. In this case, you are instructed, in order that the demand was reasonable and

seasonable, the autopsy must have been reasonably necessary to determine the cause of death and that the demand for the autopsy must have been within and under the terms of the policy and for the sole purpose of determining the cause of death, and that it was the duty of the defendant to make a demand in accordance with the terms of the policy and in a manner and method in keeping with the proprieties of the occasion.''

Appellant's objections to the instruction are suggested by the terms of the exceptions taken to it at the trial, the substance of which exceptions, as stated in appellant's brief, is:

''. . . that the same was not an issue in the case, and that the form of the demand had nothing to do with it.''

The contention is not tenable. Two written demands were made; one of them, according to its face, was made by and on behalf of the Swedish Hospital, that was not interested in the matter; while both demands, according to their faces, contained language bearing upon the question of the timeliness and scope of the requested autopsy, which, under the facts in the case, called for a finding of the jury as to the reasonableness of the demands.

The giving of instruction No. 11 is assigned as error. Without setting it out or giving the testimony relating to the point involved, it is sufficient to say that the instruction was pertinent and proper, to the effect that the burden was not upon the plaintiff to initiate proceedings for an autopsy, nor to provide the language of the form to be used in making a demand for one; that was the duty of the insurance company, if it desired an autopsy.

Judgment affirmed.

MILLARD, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.