[No. 28358.　Department Two.　August 29, 1941.]

HERBERT CHESTER GRAHAM *et al., as Executors, Respondents,* v. POLICE AND FIREMEN'S INSURANCE ASSOCIATION, *Appellant.*[1]

[1]Reported in 116 P. (2d) 352.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Robbins & Rickles* and *Sam L. Levinson,* for respondent.

SIMPSON, J.—This action was instituted by plaintiff Frances I. Ebbinghouse, widow of insured, as beneficiary of an insurance certificate issued by defendant to Oscar H. Ebbinghouse.

At the close of plaintiff's case, tried to a jury, defendant moved for a nonsuit which was denied. At the conclusion of the trial, defendant challenged the sufficiency of the evidence to sustain the verdict in favor of plaintiff. The court denied the motion. Thereafter, the jury returned a verdict for plaintiff. Defendant then presented motions for judgment notwithstanding the verdict, or in the alternative for a new trial. These motions were denied. Judgment was entered upon the verdict and defendant has appealed.

During the pendency of this appeal, plaintiff Frances I. Ebbinghouse died. Subsequently, Herbert Chester Graham and Glayds Burns were duly confirmed as executors of her last will and testament. An order was thereafter entered substituting the named executors as parties respondent.

The assignments of error are in refusing to direct a verdict in favor of defendant at the close of all of the evidence, in refusing to grant defendant's motion

for judgment n. o. v., and in entering judgment upon the verdict.

The undisputed facts show that appellant, an Indiana corporation, was engaged in writing accident and sickness insurance to its members. August 10, 1927, it issued to Oscar H. Ebbinghouse an insurance certificate or policy under the terms of which it agreed to pay his beneficiary twenty-five hundred dollars in the event the insured died through external, violent, and accidental means independent of all other causes.

The only question presented for our determination is whether the evidence was sufficient to sustain the verdict. That is: Was the evidence sufficient to justify the jury in finding that the insured's death was proximately caused by an injury sustained February 18, 1939, independent of all other causes?

The facts relative to the insured's life, his physical ailments, accident, and resulting conditions are these: Mr. Ebbinghouse, a battalion chief in the Seattle fire department, joined the force in 1904 or 1905, and remained in that employment until the time of his injury. He was fifty-nine years of age when he died. During most of his later years, he was a robust man, six feet, one inch, in height, and weighed two hundred fifteen pounds. His color was good and he slept well. May 16, 1932, he suffered an illness, but returned to work July 10, 1932. At that time his attending physician, Dr. F. T. Maxson, reported that his patient was suffering from angina pectoris. While fighting a third alarm fire June 18, 1938, Mr. Ebbinghouse was overcome by gas. He was thereafter placed on the disability list for four months. In a report to appellant, Dr. Maxson stated that the "precise nature of the illness was anginal attacks." He returned to work with the department October 25, 1938. February 18, 1939, Ebbinghouse suffered a severe accident at his home.

At that time his daughter's clothing caught fire while she was working in the basement of their home. In running or jumping down the basement steps to aid her, he fell and injured himself, and in extinguishing the fire his hands were severely burned.

The circumstances of the injury may best be described by setting out the testimony of Mrs. Ebbinghouse:

"Our living room is about thirty feet. Mr. Ebbinghouse sat at the end of the living room. The kitchen would be on the end and he sat about half way,—about the center of the room to one side and we were discussing going out. I sat on the couch at the end of the room and there was a sudden explosion and the smoke came up through the house and Mr. Ebbinghouse jumped. I have forgotten the remark,—he had not opened the furnace and it exploded almost simultaneously and before we had figured,—say anything about the explosion, there was a continuous scream, O, I mean it was a continuous scream. There was no stopping. The little one was screaming. Q. What caused the screaming? A. I did not know at the time,—but Mr. Ebbinghouse must have known. I was at the end of the room, fifteen feet away,—away, and he passed me before I could get up from the couch. He passed me and when I got up he was going out through the kitchen door and on the stairway. Q. He passed you? A. On a dead run. He was calling to the child to stand still. It was a continuous scream. His steps,—maybe two or three at a time as men frequently do when they want to hurry,—at the time I saw him fall. He lit on his chest,—the heel of his shoe had caught on the edge of the lower step. He had not jumped far enough and before I can tell he was flat on his face with his arms out and his feet the same as on this little platform. His feet was on the platform. He was lying face downward on the floor,—on the cement floor. . . . Q. How many stairs are there? A. I never counted but I should say twelve to fourteen. . . . Q. Describe to the jury how he fell. A. He was running. He got to the last two

or three steps and I saw him pitch forward. When he pitched forward on the cement floor, chest down,— he was flat on his face. I ran downstairs and by the time he got up he was on his hands and knees crawling to the little girl. She was a mass of flame from her feet up. By the time I got there he was extinguishing the fire with his bare hand."

After the accident, the insured showed a great change in his personal appearance. His eyes became sunken, his face was drawn, haggard, and colorless, and he exhibited every evidence of being dejected and unhappy. In addition, certain physical manifestations commenced to develop. He was unable to sleep, experienced great difficulty in breathing, and complained about being in constant pain, especially in his chest.

Mrs. Ebbinghouse and several fellow firemen of the insured testified to the above facts, and that before the accident Mr. Ebbinghouse appeared to be in good health, possessed a good color, was in excellent spirits, slept well, and performed the usual tasks allotted to him without becoming tired. In addition, they testified that he took part in many social affairs and was always so jovial and good natured that he was called "Happy Ebbinghouse."

March 6, 1939, Mrs. Ebbinghouse sent to appellant a document entitled "Affidavit of Claimant and Proofs of Claim for Benefits." In answer to a question relative to the cause of her husband's death, she stated, "was injured in face Feb. 18.39, broken foot. Died suddenly coronary occlusion Feb. 28.39—5 P. M." On the proof of claim, in answer to the question, "Was the member's death the direct result of accidental injury?" Dr. Maxson stated, "No. Died of Coronary occlusion Feb. 28,39."

On or about May 10, 1939, Mrs. Ebbinghouse sent an additional claim to appellant upon a form identical

with the one upon which the first claim was made. In reply to a request to give the cause of death, she stated:

"On February 18, 1939, while rushing to the rescue of his minor daughter, whose clothes had caught on fire in the basement of his home at 907 W. Howe Street, Seattle, Washington, deceased fell down the stairs and upon the cement floor of his basement and sustained injuries, consisting of a broken bone in foot and severe shock. That as a direct and proximate result of said accident he died on February 28, 1939. That immediate notice of said injury and resultant death was given to the Police & Firemen's Insurance Association."

In answer to the question "How did you understand he was injured," Dr. Maxson wrote:

"In going to aid of adopted daughter whose clothing was on fire & he fell down the basement stairs, breaking his foot, & burned his hands in tearing off her burning clothes."

And, in answer to the question "Was the member's death the direct result of accidental injury," he answered, "Yes."

Dr. Ralph Edgar Allen, a Seattle physician of many years practice, was called and testified for respondents. In a hypothetical question, the facts of the case at bar were presented to him. He was then asked whether the fall on February 18, 1939, was the proximate cause of the insured's death. The doctor stated, "Yes, it could be the exciting cause." In reply to the question, "if it had not been for the accident, in all probability the man would have been alive," the doctor said, "According to the law of probabilities, he might be alive, yes." Asked further about the accident being the proximate cause of the death, Dr. Allen answered, "In this particular case, probably so."

Dr. Maxson, called as a witness for the appellant, testified that he had known Mr. Ebbinghouse for

nearly thirty years, and had taken care of him at different times during a period of twenty-five years, and he had made an autopsy. The doctor described to the jury the condition of the diseased heart and stated that "the cause of death was unquestionably, as we call primary death, it was coronary obstruction and thrombosis," which meant "the blocking of the vessel running into the heart muscle by a clot." Questioned about answers made on the last claim presented by Mrs. Ebbinghouse, the doctor stated:

"I said here about accidental injury,—there was nothing put in this claim in regard to the coronary affair and it looked like a continuation. It is practically the same thing as this,—except filling in I said he had fallen down stairs. I said it probably was a contributing factor in the death."

He testified further:

"It unquestionably set in motion a number of circumstances which were strong contributing factors as to his death. That is, I consider that the chances were very good if he had not had this accident he might have gone on for an indefinite period. How long I don't know. It might have been a day or a year or ten years, no one knows. That is speculation when you have a coronary. If you have a coronary disease, I should answer, excitement and exhaustion may be a factor."

In passing upon the sufficiency of the evidence to take the case to the jury, there is no element of discretion. The case must be submitted if there is evidence or a reasonable inference therefrom to sustain a verdict. If the evidence offers room for a difference of opinion in the minds of reasonable men, then the case must be presented to the jury and its verdict, in so far as the facts are concerned, cannot be questioned by the courts. This rule has been so often affirmed by this court that we content ourselves with its statement.

■ In determining questions such as presented in this case, court and juries must accord great weight to the evidence given by physicians. They may, however, consider the testimony of nonexperts when it is based upon observation and the opportunity to draw a conclusion. In cases where the information is the result of familiar association, a layman may testify to disposition, appearance, and physical condition of an individual. *Askey v. New York Life Ins. Co.,* 102 Wash. 27, 172 Pac. 887, L. R. A. 1918F, 267; *Truva v. Goodyear Tire & Rubber Co.,* 124 Wash. 445, 214 Pac. 818; *Moffitt v. Goldcamp,* 195 Wash. 75, 79 P. (2d) 695.

Appellant has cited many cases in support of its contention. Every case of this nature rests upon its own facts, and the language used by the courts must be construed in relation to those facts. We have examined the cited cases with care, but find them of no assistance in determining the question before us. Most of the cases revealed facts somewhat different from those in the case at bar, and in others the question decided did not relate to the facts.

■ It is true that the insured had a disease of the heart which had manifested itself on more than one occasion. That alone, however, will not prevent a recovery on the policy.

"The weight of the authorities and the decided trend of modern authority are to the effect that, where disease merely contributes to the death or accident, after being precipitated by the accident, it is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy." *Kearney v. Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. (2d) 903.

In order to recover under a policy such as we have before us, the law does not require that a person must be in perfect health at the time an accident

occurs. *Pierce v. Pacific Mutual Life Ins. Co.,* 7 Wn. (2d) 151, 109 P. (2d) 322.

If it were otherwise, an accident policy such as the one under consideration would be of no value after the insured had contracted some disease, regardless of the fact that premiums had been paid for many years. Such cannot be the intent of the contract. It is only necessary for the evidence to disclose that the accident was a direct and proximate cause of the death, and that the proximate cause is

"... that which sets in motion a train of events which brings about a result without the intervention of any force operating or working actively from a new and independent source." *Pierce v. Pacific Mutual Life Ins. Co., supra.*

Accord, *Hanley v. Occidental Life Ins. Co.,* 164 Wash. 320, 2 P. (2d) 636; *Kearney v. Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. (2d) 903; *Hemrich v. Aetna Life Ins. Co.,* 188 Wash. 652, 63 P. (2d) 432.

"The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury." *Driskell v. United States Health & Acc. Ins. Co.,* 117 Mo. App. 362, 93 S. W. 880.

After considering all of the evidence, we are of the opinion that it justified the verdict of the jury and that the trial court did not err in denying appellant's challenge to the evidence.

The judgment is affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.