[No. 29945. *En Banc.* May 15, 1947.]

ADELINE E. TOWEY, *Respondent,* v. NEW YORK LIFE INSUR-
ANCE COMPANY, *Appellant.*

ADELINE E. TOWEY, *Respondent,* v. PRUDENTIAL INSURANCE
COMPANY OF AMERICA, *Appellant.*

ADELINE E. TOWEY, *Respondent,* v. METROPOLITAN LIFE IN-
SURANCE COMPANY, *Appellant.*[1]

[1]Reported in 180 P. (2d) 815.

830

*Catlett, Hartman, Jarvis & Williams,* for appellants New York Life Insurance Company and Prudential Insurance Company of America.

*Preston, Thorgrimson, Horowitz & Turner,* for appellant Metropolitan Life Insurance Company.

*Koenigsberg & Sanford,* for respondent.

SCHWELLENBACH, J.—These three cases were consolidated for trial. Plaintiff brought suits to recover on double indemnity provisions, due to accidental death, as found in the various policies. Trial by jury resulted in verdicts for plaintiff in each case. This appeal followed. Error is assigned on the giving of certain instructions, failure to give requested instructions, failure to grant defendants' motions for nonsuit or dismissal, and in denying defendants' motions for a new trial.

At the time of his death, Thomas J. Towey was fifty-two years old. He had been employed at Klamath Falls, Oregon, for fifteen years, by the Great Northern Railway Company, first as a mechanic, and later as a roundhouse foreman. He was stockily built, weighed about one hundred eighty-five pounds, and was five feet, ten inches tall. He was apparently in excellent physical condition, had never complained of his health, and had never suffered a headache.

He took an active interest in sports, such as golf, skating, and softball. In August, 1944, he went to Dr. Garhart in Seattle for a physical checkup. Dr. Garhart took his blood count and found it to be normal. He also took an electro-cardiograph (a picture of his heart beat) and found it to be normal.

On Sunday, January 14, 1945, Mr. Towey was at work in the roundhouse. A mechanic was working on the general overhauling of an engine stationed on a track over a pit, which was about forty inches deep. He asked Towey to go down into the pit with him and double check the job. Towey went into the pit first, carrying a flashlight, and the mechanic followed. It was necessary for them to bend over in order to walk in the pit. As they were walking, Mr. Towey struck his head on a fulcrum which extended down under the engine. (A fulcrum is a heavy piece of iron about two inches by four inches and thirty inches long, weighing about seventy pounds.) Towey swore and sat down for a couple of minutes. Then he got up and put on his hat, which had been knocked off. There were a few tears in his eyes, which he wiped away, and then continued on out of the pit.

When he went home he told his wife, "I got a hell of a bump today." He continuously complained of a headache. He slept part of the afternoon. His wife noticed that the top of his head was inflamed, although there were no abrasions. His usual habit was to get up when the alarm went off, but Monday morning his wife had to call him. His car wouldn't start, and some fellow-workmen called for him. As he got out of the car at the roundhouse, he started to reel, and they got him back into the car. They then called his home and notified the doctor. His wife met the car upon its arrival. She noticed that his clothes were wet from vomiting. He was partially paralyzed, and they had to help him into the house. Later that day he was removed to the hospital, where he died on January 18th.

Nothing was said to the doctor and nurses about the bump on the head. Mrs. Towey testified that she was so

distraught that she never thought of it. The doctor concluded from the symptoms—his paralysis, loss of speech, etc.—that Mr. Towey had suffered a stroke. The death certificate and proof of death submitted to the insurance company showed cerebral hemorrhage as the cause of death. There was nothing to indicate that death had been caused by accidental means.

One company paid, and the others arranged to pay the face of the policies. Later, the members of the family, having recalled the statement which Mr. Towey made upon his return from work on Sunday, January 14th, that he had received a bump on the head, made an investigation of that occurrence among the employees at the roundhouse. As a result of this investigation, Mrs. Towey employed Mr. Koenigsberg, who, on March 20th, wrote to the various insurance companies. The following letter to the New York Life Insurance Company is identical with letters to the other companies:

"You have arranged to pay to the beneficiary, Adeline Towey, the face amount of these policies. However, I have been informed that these policies provide for double indemnity on account of accidental death.

"Thomas J. Towey, the insured, while following his usual occupation as roundhouse foreman for the Great Northern Railway Company, on Sunday, January 14, 1945, severely bumped his head, as the result of which he died on January 18, 1945. Under the circumstances, Mrs. Towey is entitled to the additional payment under the double indemnity clause, and I am hereby for and in her behalf making demand upon your company for such payment.

"If there are any forms you desire us to fill out, please forward the same to us at once. I enclose herewith a self-addressed air-stamped envelope to facilitate an early response."

No forms for proof of accidental death were furnished, but each company answered the letters; the New York Life Insurance Company on March 28th, the Prudential on March 29th, and the Metropolitan on March 26th. In their answering letter, the New York Life Insurance Company said:

"The company offers to give consideration to any evidence you care to submit in support of your claim and meanwhile we will institute an independent investigation into the circumstances surrounding your husband's death."

The Metropolitan Life Insurance Company replied:

"If it is now Mrs. Towey's contention that Mr. Towey's death was the result of bodily injuries and caused directly and independently of all other causes by violent and accidental means, we shall consider any proof you may care to submit in her behalf to substantiate the claim, including a copy of the records of the Klamath Valley Hospital covering the treatment received there by Mr. Towey up to the time of his death."

A request for an autopsy was also made by the New York Life, in which the other companies joined.

On March 30th, before any answers were received to the letters of March 20th, the plaintiff filed the complaints in these cases. In due time, answers to the complaints were filed by the defendants.

On May 4th, an autopsy was performed by Dr. Gale E. Wilson, in the presence of doctors representing all of the parties. The autopsy revealed that the heart was about twenty per cent larger than normal. The companies' experts testified that this condition was due to the hardening of the arteries. There was also found an occlusion or clotting of some of the muscles of the heart. It was found that the large artery which supplies the middle portion of the left side of the brain, was plugged by a fresh red clot. There was no mark on the scalp which would indicate an injury. From the results of the autopsy, coupled with the history of the patient's symptoms from the time he entered the hospital, the defendants' experts testified that death was due to circulatory failure of the brain, brought on by a thrombosis; that there was no evidence to indicate that the thrombosis was brought on by a trauma. They testified that, if the death had been caused by a blow, there would have been evidence of it on the walls of the cerebral artery.

From the history of the patient's general health and physical activity, prior to the blow on the head, plaintiff's

experts testified that the blow on the head caused a cerebral hemorrhage, which was the direct cause of his death. As before stated, the jury found for the plaintiff.

Error is assigned upon the failure of respondent to furnish proof of loss, as provided in the policies. The New York Company agreed to pay double indemnity

" . . . upon receipt of due proof that death resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause."

Similar provisions were included in the policies of the other companies.

██ No particular form is necessary in providing due proof of loss.

"Except where the policy requires the proofs of loss to include particular documents or exhibits, a proof of loss is sufficient if it gives the company enough information to enable it to frame an intelligent estimate of its rights and liabilities. As a general rule proofs establishing a prima facie case of injury or death by accidental means are sufficient; but, while the proofs should show that the death or injury was due to accidental causes with reasonable definiteness and certainty, it is not necessary that proofs, like a pleading, be able to withstand a demurrer, and it is sufficient if the proofs call the attention of the company to the fact that a loss has occurred. Proofs giving the best information available at the time are sufficient. Where a proof of loss is filed on the company's blank, it is sufficient if the blank is filled out in a responsive manner." 45 C. J. S. 1219, § 987.

We shall first consider the contention of appellants New York Life and Prudential that their motions for dismissal should have been granted because due proof of accidental death had not been submitted to the companies at the time the actions were commenced, claiming that due proof of loss was a condition precedent to commencement of suit. The companies agreed to pay the face values of the policies upon due proof of death. This information was furnished, and the companies paid or obligated themselves to pay. The companies also agreed to pay double the face of the policies upon due proof of accidental death.

■ The provision for furnishing due proof is for the benefit of the company, in order to assist it in deciding whether it considers itself liable.

Appellants rely upon our ruling in *Kuck v. Citizens' Ins. Co.*, 90 Wash. 35, 155 Pac. 406, stating that:

"The rule is well settled in this state that the making of proof of loss as required by the policy is a condition precedent to the maintenance of an action, unless failure to present proofs is due to a misleading of the insured by the officers or agents of the insurance company."

However, the policy in that case (and in the other cases cited as authority for the foregoing rule) contained a provision that no suit or action on the policy could be maintained until after full compliance by the insured with all of the requirements of the policy. No such provision was contained in the policies under consideration.

■ Where the parties have not stipulated in the contract that no action can be commenced without first submitting due proof of loss, then, if the companies wish at the time of trial to rely upon the failure to submit due proof, they must affirmatively allege such failure in their answer and must sustain the burden of proof in that respect. Otherwise, they waive their right to rely upon such failure.

Rem. Rev. Stat., §§ 263 and 264 [P.P.C. §§ 85-17, -19] provide:

"§ 263. If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting always the objection that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of the proceedings, either in the superior or supreme court."

"§ 264. The answer of the defendant must contain, —

"1. A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief;

"2. A statement of any new matter constituting a defense or counterclaim, in ordinary and concise language without repetition."

Respondent, in her complaints, did not set out the policies, but merely alleged:

"That each of said policies has a provision therein to the effect that if the assured died as the result of an accident the insurer, defendant herein, would pay double indemnity."

These allegations were simply denied under a general denial. The failure to submit due proof prior to suit was not affirmatively pleaded. The right to rely upon the failure to submit due proof before commencing the suit, was, therefore, waived by the companies.

As to the Metropolitan Company, it affirmatively alleged the failure of respondent to submit due proof, as required by the contract, prior to the commencement of the action, thereby putting respondent on notice that it intended, at the trial, to rely upon such failure. Having proved at the time of trial that respondent failed to submit due proof of loss to the Metropolitan Company, prior to the institution of the action, its motion for a dismissal should have been granted.

Error is assigned upon the failure of the trial court to dismiss the actions at the close of plaintiff's case, and at the close of the trial. It is contended, in view of the wording of the policies, that there was not sufficient evidence to submit the case to the jury.

In *Graham v. Police & Firemen's Ins. Ass'n,* 10 Wn. (2d) 288, 116 P. (2d) 352, the insured was a member of the Seattle fire department and was a robust man. On May 16, 1932, he suffered an illness but returned to work July 10, 1932. His physician reported he was suffering from angina pectoris. While fighting a fire June 18, 1938, he was overcome by gas and was placed on the disability list for four months. It was reported that the "precise nature of the illness was anginal. attacks." On February 18, 1939, while rushing down the basement steps to aid a daughter, whose clothing had caught fire due to an explosion, he fell and injured himself. He died February 28, 1939. A physician testifying at the trial, stated that in all probability if it had not been for the accident, the man would still be

alive. In affirming a judgment rendered to his beneficiary, we said:

"It is true that the insured had a disease of the heart which had manifested itself on more than one occasion. That alone, however, will not prevent a recovery on the policy.

" 'The weight of the authorities and the decided trend of modern authority are to the effect that, where disease merely contributes to the death or accident, after being precipitated by the accident, it is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy.' *Kearney v. Washington Nat. Ins. Co.*, 184 Wash. 579, 52 P. (2d) 903.

"In order to recover under a policy such as we have before us, the law does not require that a person must be in perfect health at the time an accident occurs. *Pierce v. Pacific Mutual Life Ins. Co.*, 7 Wn. (2d) 151, 109 P. (2d) 322.

"If it were otherwise, an accident policy such as the one under consideration would be of no value after the insured had contracted some disease, regardless of the fact that premiums had been paid for many years. Such cannot be the intent of the contract. It is only necessary for the evidence to disclose that the accident was a direct and proximate cause of the death, and that the proximate cause is

" ' . . . that which sets in motion a train of events which brings about a result without the intervention of any force operating or working actively from a new and independent source.' *Pierce v. Pacific Mutual Life Ins. Co., supra.*

"Accord, *Hanley v. Occidental Life Ins. Co.*, 164 Wash. 320, 2 P. (2d) 636; *Kearney v. Washington Nat. Ins. Co.*, 184 Wash. 579, 52 P. (2d) 903; *Hemrich v. Aetna Life Ins. Co.*, 188 Wash. 652, 63 P. (2d) 432.

" 'The fact that the physical infirmity of the victim may be a necessary condition to the result does not deprive the injury of its distinction as the sole producing cause. In such case, disease or low vitality do not arise to the dignity of concurring causes, but, in having deprived nature of her normal power of resistance to attack, appear rather as the passive allies of the agencies set in motion by the injury.' *Driskell v. United States Health & Acc. Ins. Co.*, 117 Mo. App. 362, 93 S. W. 880."

Our attention is called to our recent decision in *Evans v. Metropolitan Life Ins. Co.*, 26 Wn. (2d) 594, 174 P. (2d)

961, where the insured collapsed and died after pushing a stalled automobile down the street. That case merely held that

" . . . accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death."

 The facts in this case more closely resemble the facts in the *Graham* case, rather than those in the *Evans* case. We hold that there was sufficient evidence to go to the jury, as to the cause of Mr. Towey's death.

Error is assigned on the giving of instruction No. 10 in the New York Life case, and the failure to give proposed instruction No. 4. Similar instructions were given and proposed in the other cases.

Instruction No. 10 was as follows:

"You are instructed that 'death . . . resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means . . .' as used in the policies under consideration is to be given a reasonable interpretation by you and is to be construed in such way that, in the event you find that the injury, if any, stands out as the predominant factor in the production of the result, then such terms of the policy have been met by the plaintiff.

"You are further instructed that the injury, if any, need not be so virulent in character as necessarily and inevitably to have produced the result regardless of all other conditions and circumstances. People differ so widely in health, vitality and ability to resist disease and injury that what may mean death to one man would be comparatively harmless to another and therefore, the fact that a given injury may not be generally lethal does not prevent it from becoming so under certain conditions and if, under the peculiar temperament or condition of health of an individual upon whom it is inflicted, such injury appears as the active, efficient cause that sets in motion agencies that result in death without the intervention of any other independent force, then it should be regarded as the sole and proximate cause of death."

Proposed instruction No. 4 was as follows:

"Under the wording of all four insurances policies which has been heretofore given to you in these instructions, you

are instructed that if you find from the facts that the death of the insured, Thomas J. Towey, was due to, or the result of, directly or indirectly, any infirmity of mind or body, or illness or disease, or that illness or disease was one of the causes or contributed to his death, then the plaintiff would not be entitled to recover under the double indemnity provisions against any of the companies in this action, and your verdict should be for each one of the defendants."

The New York policy provided:

"The Double Indemnity specified on the first page hereof shall be payable upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means and occurred within ninety days after such injury; provided, however, that such Double Indemnity shall not be payable if the Insured's death resulted . . . directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than that occurring in consequence of accidental and external bodily injury."

Similar provisions are contained in the policies of the other companies.

*Evans v. Metropolitan Life Ins. Co., supra,* considered two questions:

"First, do the facts as disclosed by the records show, or does any reasonable inference which may be drawn from them prove, that Mr. Evans' death was the result of an accident; second, can it be held that the stipulated restrictions in the policies allow recovery in this case, and cases of like nature?"

As to the second question, after reviewing the decisions of this and other states, we held:

"The term 'proximate cause' has no application in ascertaining liability upon policies which contain clauses relieving the insurance companies from liability in cases where death is caused or contributed to directly, or indirectly, or wholly or partially, by disease, and the evidence showed that the disease contributed to the death. Where the liability of the insurance company is so restricted, it is not sufficient for a beneficiary to establish a direct causal connection between the accident and the injury. He is compelled to show that the resultant condition was caused

solely by accidental means; and, if the proof shows a pre-existing infirmity which was a contributing factor, he cannot recover. This holding is dictated by the express terms of the contracts under consideration.

"However, if it be found that disease, while existing, be but a condition, and the accident the sole and proximate cause of death, the exception in the policy will not relieve for death so caused."

We cannot make contracts for people. If they agree with an insurance company that it will pay double indemnity only upon certain stipulated contingencies, their beneficiaries are bound by such agreements.

We have held that there was sufficient evidence to be submitted to the jury on the question as to the cause of Mr. Towey's death under these contracts. But such question must be submitted under proper instructions as to the law. Had the policies contained no restrictive clause, restricting recovery if death were caused directly or indirectly from infirmity of mind or body, from illness or disease, then, under the authority of *Pierce v. Pacific Mut. Life Ins. Co.,* 7 Wn. (2d) 151, 109 P. (2d) 322, the first paragraph of instruction No. 10 would have been proper. But with the above-mentioned clause in the policies, it was reversible error to give the first paragraph of instruction No. 10, and to refuse to give proposed instruction No. 4 or some similar instruction. In justice to the trial court and counsel, we wish to point out that, at the time these cases were tried, the decision in the *Evans* case had not been handed down by this court.

The judgment will be reversed as to the Metropolitan Life Insurance Company, and new trials granted to the New York and Prudential companies.

MALLERY, C. J., STEINERT, ROBINSON, SIMPSON, JEFFERS, ABEL, and HILL, JJ., concur.

---

July 1, 1947. Petition for rehearing denied.